PARIENTE, C.J.,
concurring.
Although I agree with much of what Justice Lewis says in his dissenting opinion as to the practical effect of this proposed amendment, I conclude that these concerns are beyond the scope of our current review. The chief purpose of an amendment, which must be conveyed in a ballot summary, is distinct from its potential effect or the motivations of the proponents. As I stated in my concurring opinion in Advisory Opinion to the Attorney General re Public Protection From Repeated Medical Malpractice, No. SC04-778, 880 So.2d 667, 674, 2004 WL 1574024 (Fla. July 15, 2004), “our focus in assessing whether a ballot summary conveys the true meaning and ramifications of the amendment has been whether the summary misleads voters into concluding that the amendment would provide greater citizen protection than current law, when in fact it would provide less protection than the Constitution or law currently provided.”
The summary in this case does not mislead voters into concluding that they would receive more legal protection than under current law. It says nothing whatsoever concerning greater or lesser protection. It merely guarantees them a particular percentage of their recovery in a medical liability claim. Thus, it does not purport to create a right when in fact it restricts that right, as in cases in which we have disapproved ballot summaries. See, e.g., Advisory Opinion to the Atty. Gen. re Right of Citizens to Choose Health Care Providers, 705 So.2d 563, 566 (Fla.1998) (“We also find that the proposed amendment creates an illusory right to choose a health care provider when in fact it would severely limit an individual’s ability to enter into a health care contract.”).
If approved, the amendment may well hamper citizens’ ability to press their medical liability claims because its ceiling on contingency fee percentages would discourage the participation of knowledgeable and experienced counsel. Nonetheless, nothing within the text of the amendment points to that result. The fact that one may reasonably anticipate particular consequences of the amendment does not render a summary that omits these potential consequences misleading as to the current state of the law.
As Justice Lewis has stated, the proponents of this amendment appear to have an ulterior purpose. However, that is not a fatal flaw at this stage of the process. Advocates of a constitutional amendment may have different motives. We cannot say with confidence that all who might favor this amendment and are aware of its potential impact on legal representation would favor its passage solely for that reason. To ascribe one primary motive to advocates of a measure, and then require that this motive be conveyed in a seventy-five word ballot summary, is impractical if not impossible.
I conclude that the task of informing the public as to the possible motivations behind the proposed amendment and its potential practical effects must fall on the proponents and opponents of the measure. The following observations we made in reviewing another summary hold true here:
It is true ... that certain of the details of the [text] as well as some of its ramifications were either omitted from the ballot question or could have been better explained therein. That, however, is not the test. There is no requirement that the referendum question set forth the [text] verbatim nor explain its complete terms at great and undue length. Such would hamper instead of aiding the intelligent exercise of the privilege of voting. Under our system of free elections, *681 the voter must acquaint himself with the details of a proposed ordinance on a referendum together with the pros and cons thereon before he enters the voting booth. If he does not, it is no function of the ballot question to provide him with that needed education. What the law very simply requires is that the ballot give the voter fair notice of the question he must decide so that he may intelligently cast his vote. That requirement has been more than adequately met in this case.
Advisory Opinion to Atty. Gen. re Right to Treatment and Rehabilitation, 818 So.2d 491, 498 (Fla.2002) (quoting Metropolitan Dade County v. Shiver, 365 So.2d 210, 213 (Fla. 3d DCA 1978)).
Accordingly, I concur in the majority’s approval of this ballot title and summary for placement on the ballot.
QUINCE, J., concurs.