# Supreme Court of Florida

_____

No. SC19-1266
_____

**ADVISORY OPINION TO THE ATTORNEY GENERAL**
**RE: PROHIBITS POSSESSION OF DEFINED ASSAULT WEAPONS.**

June 4, 2020

PER CURIAM.

The Attorney General of Florida has requested this Court's opinion as to the validity of a citizen initiative petition circulated pursuant to article XI, section 3 of the Florida Constitution. We have jurisdiction. *See* art. IV, § 10, art. V, § 3(b)(10), Fla. Const. For the reasons explained below, we conclude that the proposed initiative, titled "Prohibits possession of defined assault weapons" (the "Initiative"), should not be placed on the ballot.

## BACKGROUND

On July 26, 2019, the Attorney General petitioned this Court for an opinion as to the validity of the Initiative, which is sponsored by Ban Assault Weapons NOW. The sponsor submitted a brief supporting the validity of the Initiative, as

did Brady and Team ENOUGH and the Municipalities.[1]  The Attorney General,

the National Rifle Association, and the National Shooting Sports Foundation

submitted briefs in opposition.

The Initiative would amend article I, section 8 of the Florida Constitution as

follows:

ARTICLE I, SECTION 8.  Right to Bear Arms.-

(a) The right of the people to keep and bear arms in defense of
themselves and of the lawful authority of the state shall not be
infringed, except that the manner of bearing arms may be regulated by
law.
(b) There shall be a mandatory period of three days, excluding
weekends and legal holidays, between the purchase and delivery at
retail of any handgun.  For the purposes of this section, "purchase"
means the transfer of money or other valuable consideration to the
retailer, and "handgun" means a firearm capable of being carried and
used by one hand, such as a pistol or revolver.  Holders of a concealed
weapon permit as prescribed in Florida law shall not be subject to the
provisions of this paragraph.
(c) The legislature shall enact legislation implementing subsection (b)
of this section, effective no later than December 31, 1991, which shall
provide that anyone violating the provisions of subsection (b) shall be
guilty of a felony.
(d) This restriction shall not apply to a trade in of another handgun.
(e) The possession of an assault weapon, as that term is defined in this
subsection, is prohibited in Florida except as provided in this
subsection.  This subsection shall be construed in conformity with the
Second Amendment to the United States Constitution as interpreted
by the United States Supreme Court.

_____

1.  The City of Weston, City of Coconut Creek, City of Coral Gables, City of Fort Lauderdale, City of Lauderhill, City of Miami Beach, City of Miramar, City of North Bay Village, City of Pembroke Pines, City of Safety Harbor, City of South Miami, Village of Pinecrest, and Town of Surfside were identified as interested parties.

1) Definitions -

    a) Assault Weapons - For purposes of this subsection, any semiautomatic rifle or shotgun capable of holding more than ten (10) rounds of ammunition at once, either in a fixed or detachable magazine, or any other ammunition-feeding device. This subsection does not apply to handguns.

    b) Semiautomatic - For purposes of this subsection, any weapon which fires a single projectile or a number of ball shots through a rifled or smooth bore for each single function of the trigger without further manual action required.

    c) Ammunition-feeding device - For purposes of this subsection, any magazine, belt, drum, feed strip, or similar device for a firearm.

2) Limitations -

    a) This subsection shall not apply to military or law enforcement use, or use by federal personnel, in conduct of their duties, or to an assault weapon being imported for sale and delivery to a federal, state or local governmental agency for use by employees of such agencies to perform official duties.

    b) This subsection does not apply to any firearm that is not semiautomatic, as defined in this subsection.

    c) This subsection does not apply to handguns, as defined in Article I, Section 8(b), Florida Constitution.

    d) If a person had lawful possession of an assault weapon prior to the effective date of this subsection, the person's possession of that assault weapon is not unlawful (1) during the first year after the effective date of this subsection, or (2) after the person has registered with the Florida Department of Law Enforcement or a successor agency, within one year of the effective date of this subsection, by providing a sworn or attested statement, that the weapon was lawfully in his or her possession prior to the effective date of this subsection and by identifying the weapon by make, model, and serial number. The agency must provide and the person must retain proof of registration in order for possession to remain lawful under this subsection. Registration records

shall be available on a permanent basis to local, state and federal law enforcement agencies for valid law enforcement purposes but shall otherwise be confidential.
3) Criminal Penalties - Violation of this subsection is a third-degree felony. The legislature may designate greater but not lesser, penalties for violations.
4) Self-executing - This provision shall be self-executing except where legislative action is authorized in subsection (3) to designate a more severe penalty for violation of this subsection. No legislative or administrative action may conflict with, diminish or delay the requirements of this subsection.
5) Severability - The provisions of this subsection are severable. If any clause, sentence, paragraph, section or subsection of this measure, or an application thereof, is adjudged invalid by any court of competent jurisdiction, other provisions shall continue to be in effect to the fullest extent possible.
6) Effective date - The effective date of this amendment shall be thirty days after its passage by the voters.

The ballot title for the Initiative is "Prohibits possession of defined assault weapons," and the ballot summary reads as follows:

Prohibits possession of assault weapons, defined as semiautomatic rifles and shotguns capable of holding more than 10 rounds of ammunition at once, either in fixed or detachable magazine, or any other ammunition feeding device. Possession of handguns is not prohibited. Exempts military and law enforcement personnel in their official duties. Exempts and requires registration of assault weapons lawfully possessed prior to this provision's effective date. Creates criminal penalties for violations of this amendment.

**STANDARD OF REVIEW**

When this Court renders an advisory opinion concerning a proposed constitutional amendment arising through the citizen initiative process, "[the Court's] review of the proposed amendment is confined to two issues: (1) whether

the proposed amendment itself satisfies the single-subject requirement of article XI, section 3, of the Florida Constitution; and (2) whether the ballot title and summary satisfy the requirements of section 101.161(1), Florida Statutes (201[9])." *Advisory Op. to Att'y Gen. re Voter Control of Gambling in Fla.*, 215 So. 3d 1209, 1212 (Fla. 2017) (quoting *Advisory Op. to Att'y Gen. re Use of Marijuana for Certain Med. Conditions*, 132 So. 3d 786, 791 (Fla. 2014) (*Medical Marijuana I*)). In addressing these two issues, the Court must not address the merits or wisdom of the Initiative. *Advisory Op. to Att'y Gen. re Amend. to Bar Gov't from Treating People Differently Based on Race in Pub. Educ.*, 778 So. 2d 888, 891 (Fla. 2000). Further, the Court has a "duty . . . to uphold the proposal unless it can be shown to be 'clearly and conclusively defective.' " *Medical Marijuana I*, 132 So. 3d at 795 (quoting *Advisory Op. to Att'y Gen. re Fla.'s Amend. to Reduce Class Size*, 816 So. 2d 580, 582 (Fla. 2002)). "This Court has traditionally applied a deferential standard of review to the validity of a citizen initiative petition and 'has been reluctant to interfere' with 'the right of self-determination for *all* Florida's citizens' to formulate 'their own organic law.' " *Id.* at 794 (quoting *Advisory Op. to Att'y Gen. re Right to Treatment & Rehab. for Non-Violent Drug Offenses*, 818 So. 2d 491, 494 (Fla. 2002)).

**ANALYSIS**

While the parties have raised a number of issues for this Court's consideration, we address only one issue that is dispositive—the ballot summary affirmatively misleads voters regarding the exemption addressed in the next to last sentence of the ballot summary, which provides that the Initiative "[e]xempts and requires registration of assault weapons lawfully possessed prior to this provision's effective date." This misleading language violates section 101.161(1), Florida Statutes (2019), which sets forth the requirements for the ballot title and summary of an initiative petition and provides as follows:

> [A] ballot summary of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot . . . . The ballot summary of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure. . . . The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.

§ 101.161(1), Fla. Stat. (2019).

These statutory requirements serve to ensure that the ballot summary and title "provide fair notice of the content of the proposed amendment" to voters so that they "will not be misled as to [the proposed amendment's] purpose, and can cast an intelligent and informed ballot." *Advisory Op. to Att'y Gen. re Right of Citizens to Choose Health Care Providers*, 705 So. 2d 563, 566 (Fla. 1998) (quoting *Advisory Op. to Att'y Gen.—Fee on Everglades Sugar Prod.*, 681 So. 2d

1124, 1127 (Fla. 1996)).  This Court has explained that "the ballot title and summary may not be read in isolation, but must be read together in determining whether the ballot information properly informs the voters."  *Advisory Op. to Att'y Gen. re Voluntary Univ. Pre-Kindergarten Educ.*, 824 So. 2d 161, 166 (Fla. 2002).

"Ballot language may be clearly and conclusively defective either in an affirmative sense, because it misleads the voters as to the material effects of the amendment, or in a negative sense by failing to inform the voters of those material effects."  *Advisory Op. to Att'y Gen. re Right to Competitive Energy Mkt. for Customers of Inv'r-Owned Utilities*, 287 So. 3d 1256, 1260 (Fla. 2020) (quoting *Dep't of State v. Fla. Greyhound Ass'n, Inc.*, 253 So. 3d 513, 520 (Fla. 2018)).  Therefore, "the Court must consider two questions: '(1) whether the ballot title and summary . . . fairly inform the voter of the chief purpose of the amendment; and (2) whether the language of the title and the summary, as written, misleads the public.' "  *Fla. Dep't of State v. Slough*, 992 So. 2d 142, 147 (Fla. 2008) (quoting *Advisory Op. to Att'y Gen. re Prohib. State Spending for Experimentation that Involves the Destruction of a Live Human Embryo*, 959 So. 2d 210, 213-14 (Fla. 2007)).

Here, the ballot summary fails to satisfy the requirements of section 101.161(1) and is affirmatively misleading because the meaning of the text of the ballot summary does not accurately describe the meaning of the Initiative's text

regarding the exemption.

Specifically, the next to last sentence of the ballot summary informs voters that the Initiative "[e]xempts and requires registration of *assault weapons* lawfully possessed prior to this provision's effective date" (emphasis added), when in fact the Initiative does no such thing. Contrary to the ballot summary, the Initiative's text exempts only "*the person's*," meaning the current owner's, possession of that assault weapon. The Initiative's text provides:

> If a person had lawful possession of an assault weapon prior to the effective date of this subsection, *the person's possession* of that assault weapon is not unlawful (1) during the first year after the effective date of this subsection, or (2) after the person has registered with the Florida Department of Law Enforcement or a successor agency, within one year of the effective date of this subsection, by providing a sworn or attested statement, that the weapon was lawfully in his or her possession prior to the effective date of this subsection and by identifying the weapon by make, model, and serial number.

(Emphasis added.) While the ballot summary purports to exempt registered assault weapons lawfully possessed prior to the Initiative's effective date, the Initiative does not categorically exempt the assault weapon, only the current owner's possession of that assault weapon. The ballot summary is therefore affirmatively misleading.

The Proponents argue that, notwithstanding this divergence in text and meaning, voters will understand that the registered assault weapon itself would not be exempt, just the current owner's possession of it. We reject this argument. The

ballot summary informs voters that registered assault weapons lawfully possessed prior to the Initiative's effective date are exempt from the scope of the Initiative altogether, which misleads voters to believe that any lawfully possessed assault weapons will continue to remain lawful. However, the Initiative contemplates the eventual criminalization of the possession of assault weapons, even if the assault weapon itself was lawfully possessed and registered prior to the Initiative's effective date. As the Opponents argue, if an individual registers and attests to lawful possession of an assault weapon, and then lends, gifts, or leaves in a will that assault weapon to a family member or friend, then that family member or friend would be in criminal violation of the Initiative—a felony offense. The summary indicates the opposite, that once registered, the assault weapon will be exempt. Therefore, because the ballot summary is affirmatively misleading, it does not satisfy the requirements of section 101.161.

## CONCLUSION

For the reasons stated, we conclude that the ballot summary is misleading and does not comply with section 101.161(1), Florida Statutes. Accordingly, this Initiative cannot be placed on the ballot.

It is so ordered.

CANADY, C.J., and POLSTON, LAWSON, and MUÑIZ, JJ., concur.
LABARGA, J., dissents with an opinion.
COURIEL, J., did not participate.

- 9 -

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., dissenting.

Because I conclude that the ballot summary satisfies the requirements of section 101.161(1), Florida Statutes (2019), I believe the Initiative should appear on the ballot for voter consideration.

The ballot title clearly communicates the chief purpose of the Initiative, and the ballot summary clearly summarizes the content of the proposed amendment. The language with which the majority takes exception, "[e]xempts and requires registration of assault weapons lawfully possessed prior to this provision's effective date," is not affirmatively misleading. In fact, the language is accurate, and the majority simply concludes that the language is insufficiently narrow.

In applying the requirements of section 101.161(1), this Court must be mindful that the ballot summary is just that—a summary—consisting of no more than seventy-five words. As this Court has stated: "We recognize that the seventy-five word limit on ballot summaries prevents the summary from revealing all the details or ramifications of the proposed amendment. Accordingly, we have never required that the summary explain the complete details of a proposal at great and undue length, nor do we do so now." *Smith v. Am. Airlines, Inc.*, 606 So. 2d 618, 621 (Fla. 1992); *see also Advisory Op. to Att'y Gen. re Right to Treatment &*

*Rehab.*, 818 So. 2d 491, 498 (Fla. 2002); *Advisory Op. to Att'y Gen. re Ltd. Casinos*, 644 So. 2d 71, 74-75 (Fla. 1994).

"[V]oters are generally required to do their homework and educate themselves about the details of a proposal and about the pros and cons of adopting the proposal." *Smith*, 606 So. 2d at 621. The ballot title and summary provide fair notice and equip voters to educate themselves about the details of the Initiative. Consequently, the Initiative should be placed on the ballot.

I dissent to the majority's decision precluding the Initiative from voter consideration.

Original Proceeding – Advisory Opinion – Attorney General

Ashley Moody, Attorney General, Amit Agarwal, Solicitor General, and James H. Percival, Deputy Solicitor General, Tallahassee, Florida,

    for Petitioner

Jon Lester Mills of Boies Schiller Flexner LLP, Miami, Florida, Stuart H. Singer and Corey P. Gray of Boies Schiller Flexner LLP, Fort Lauderdale, Florida, and Andrew M. Starling, Orlando, Florida,

    for Interested Party, Ban Assault Weapons Now

Benjamin Gibson, Jason Gonzalez, Daniel Nordby, Amber Stoner Nunnally, and Rachel Procaccini of Shutts & Bowen, LLP, Tallahassee, Florida,

    for Interested Party, National Shooting Sports Association

Matthew Triggs, Proskauer Rose LLP, Boca Raton, Florida, Lindsey Olson Collins and Nathaniel J. Miller, Proskauer Rose LLP, New York, New York, Kyle A. Casazza and Christina H. Kroll, Proskauer Rose LLP, Los Angeles, California; and Jonathan E. Lowy of Brady, Washington, District of Columbia,

for Interested Parties, Brady Center to Prevent Gun Violence and Team ENOUGH

Edward G. Guedes, Jamie A. Cole, and Adam Hapner of Weiss Serota Helfman Cole & Bierman, P.L., Coral Gables, Florida,

for Interested Parties, City of Weston, City of Coconut Creek, City of Coral Gables, City of Fort Lauderdale, City of Lauderhill, City of Miami Beach, City of Miramar, City of North Bay Village, City of Pembroke Pines, City of Safety Harbor, City of South Miami, Village of Pinecrest, and Town of Surfside

Andy Bardos, Ashley Hoffman Lukis, George T. Levesque, and Jason Unger of GrayRobinson, P.A., Tallahassee, Florida,

for Interested Party, National Rifle Association of America